Richard Louis Arnold PHILLIPS,
Petitioner–Appellant,

v.

Daniel B. VASQUEZ, Warden,
San Quentin State Prison,
Respondent–Appellee.

No. 92–15828.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 11, 1994.

Decided May 26, 1995.

Donald Horvath, Fresno, CA, for petitioner-appellant.

Edmund D. McMurray, Deputy Atty. Gen., Sacramento, CA, for respondent-appellee.

Before FLETCHER, REINHARDT, KLEINFELD, Circuit Judges.

Opinion by Judge REINHARDT; Concurrence by Judge KLEINFELD.

REINHARDT, Circuit Judge:

It has been almost fifteen years since Richard Louis Arnold Phillips was convicted of murder and first sentenced to death, and ten years since the state supreme court affirmed his conviction and vacated his sentence. The question before us is whether we should now review the constitutionality of Phillips' conviction or require him to continue to wait until the state has rendered a final decision regarding his sentence before allowing him to petition for habeas review of the conviction.

*BACKGROUND*

In 1980, Phillips was convicted of first degree murder with special circumstance, attempted murder, and robbery; he was subsequently sentenced to death. The State of California has bifurcated the process for ad-judicating guilt and imposing a death sentence; thus, the death sentence is imposed through an entirely separate trial. In 1985, the Supreme Court of California affirmed Phillips' conviction but reversed his death sentence. *People v. Phillips*, 41 Cal.3d 29, 222 Cal.Rptr. 127, 711 P.2d 423 (1985). Phillips was not resentenced to death until 1992; the automatic appeal from that sentence has been pending before the state supreme court since early 1993. Thus, Phillips' conviction has been final for approximately ten years while the validity of his death sentence remains unresolved.

Despite the significant delay that has already taken place, there is no indication that Phillips' appeal from his sentence will be decided anytime in the near future. To the contrary, due to significant problems involving inaccuracies in the sentencing trial transcript, it appears that the state supreme court may not decide the case for some time. Thus, there is no way to determine when Phillips' sentence will be final, even assuming that the state supreme court will affirm it. Of course, if that court again finds errors in the sentencing decision, Phillips may well be forced to wait another substantial period of time before any sentence becomes final under state law.

Phillips petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in 1992; his petition contained only claims arising from his conviction. The district court dismissed the habeas petition without prejudice on two grounds. First, it declined to interfere with the ongoing state criminal proceeding under the abstention doctrine first articulated in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Second, because Phillips' sentencing appeal was still pending, it dismissed the petition on the ground that he had not exhausted available state remedies as required by *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). The district court subsequently declined to issue a certificate of probable cause when Phillips sought to appeal its decision to dismiss his petition.

We granted Phillips' request for a certificate of probable cause and instructed the parties to submit briefs regarding the ex-

haustion and abstention issues. Accordingly, we may exercise jurisdiction over the district court's denial of Phillips' habeas claim under 28 U.S.C. § 2253.

In light of the extraordinary delay, we hold that Phillips may bring his habeas petition regarding the constitutionality of his conviction despite the fact that the state has not yet made a final ruling on his sentence. We conclude that Phillips' right to reasonably prompt review of his conviction outweighs the jurisprudential concerns that might otherwise lead us to decline to review his petition. Neither *Rose* nor *Younger* prevents him from seeking and obtaining habeas review of his conviction.

## ANALYSIS

### A. Finality of the Judgment

■ The state does not contest Phillips' argument that his state conviction is final. It argues that he is not yet subject to a final judgment, because his sentence is not yet final.

California procedure separates the determination of guilt from the determination of penalty especially sharply. California has bifurcated into "separate phases" what it calls the guilt phase and the penalty phase of death penalty cases. See Cal.Penal Code § 190.1. It is undisputed that the guilt phase of this case is final.[1] It has been affirmed by the California Supreme Court. No further review of the guilt phase in state court is available. Habeas corpus proceed-

ings regarding the guilt phase will not affect the ongoing state proceedings.

### B. The Requirements of Younger and Rose

■ Although the state makes no argument regarding the finality of the judgment under California law, it asserts that federal law—specifically the abstention doctrine of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and the exhaustion requirement of *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982)—precludes this court from considering Phillips' habeas petition until the state courts have reached a final determination concerning his sentence. We disagree.

■ First, on appeal Phillips does not seek to enjoin an ongoing state proceeding; instead, he seeks only to collaterally attack his conviction. The state has already adjudicated Phillips' guilt, its decision in that regard is final, and Phillips seeks nothing more than federal review of that decision. The ongoing state proceeding involves sentencing only, and the state is free to continue with its sentencing determination. The rule against staying a proceeding does not prevent us from deciding a related issue, even if that decision ultimately renders the state proceeding moot. Thus, the Supreme Court's holding in *Younger* that federal courts must exercise significant caution in enjoining ongoing state criminal proceedings is inapplicable to the case before us. Accordingly, we hold that the abstention doctrine does not prevent us from reviewing Phillips' petition.[2]

---

1. Indeed, the state courts have consistently held that a conviction under California's bifurcated process for adjudicating death penalty cases is a final judgment. For example, in *People v. Jackson*, 67 Cal.2d 96, 60 Cal.Rptr. 248, 250, 429 P.2d 600, 602 (1967) (discussing the retroactive application of *Escobedo v. Illinois*, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964)), the Supreme Court of California noted that "[a] judgment becomes final when all avenues of direct review are exhausted" and specifically held that a conviction for murder is a final judgment even when the death penalty sentence has been reversed and is not yet final. Similarly, the Supreme Court of California noted that when a judgment is vacated only insofar as it relates to the death penalty, "[t]he scope of th[e] retrial is a matter of state procedure under which the original judgment on the issue of guilt remains final during retrial of the penalty issue and during all

appellate proceedings reviewing the trial court's decision on that issue." *People v. Kemp*, 10 Cal.3d 611, 111 Cal.Rptr. 562, 564, 517 P.2d 826, 828 (1974) (discussing the application of *Escobedo* ).

2. In his separate concurrence, Judge Kleinfeld asserts that *Younger* should generally apply but concludes that an exception to *Younger* justifies our decision in this case. However, the only cases he cites concern the application of *Younger* to ongoing trials or direct appeals. See, e.g., *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 608, 95 S.Ct. 1200, 1210, 43 L.Ed.2d 482 (1975) (concluding that *Younger* applies to state appellate proceedings as well as to ongoing proceedings in a state trial court); *Sherwood v. Tomkins*, 716 F.2d 632, 634 (9th Cir.1983) (declining to provide a petitioner appellate counsel and trial transcripts for an ongoing state appeal from a state

■ Second, we conclude that the district court erred in dismissing Phillips' habeas petition for failure to exhaust state remedies under *Rose*. In *Rose*, the Supreme Court held that a petition containing both exhausted and unexhausted claims must be dismissed. The plurality opinion noted, however, that prisoners who submit mixed petitions "nevertheless are entitled to resubmit a petition with only exhausted claims or to exhaust the remainder of the claims." *Rose*, 455 U.S. at 520, 102 S.Ct. at 1204.[3]

The plurality thus makes clear that a defendant may choose to submit a petition containing only exhausted claims, even when his remaining claims are unexhausted, without

---

criminal trial); *Drury v. Cox*, 457 F.2d 764, 764–65 (9th Cir.1972) (declining to entertain a petition claiming that the state lacked probable cause to bind a defendant over for trial when the defendant had not yet been convicted in state court). Here, in contrast, the state proceeding regarding Phillips' conviction is final and, according to Phillips, fully exhausted both with regard to direct and collateral state remedies; our decision, if favorable to Phillips, would simply overturn the result in a completed state proceeding just like decisions ordinarily do in the case of successful habeas petitions. The only difference, here, is that a decision on the merits of Phillips' habeas petition might effectively moot the state's entirely separate and independent adjudication of his sentence.

Our concurring colleague's argument would be more persuasive if, as he suggests, " 'final judgment' " always " 'means sentence.' " Concurrence, at 1038 (quoting *Berman v. United States*, 302 U.S. 211, 212, 58 S.Ct. 164, 166, 82 L.Ed. 204 (1937)). However, his reliance upon *Berman* is misplaced. First, as we discuss above, California law makes clear that a conviction is final even if the sentence is not. *See supra* note 1. More important, the Supreme Court has explicitly rejected the notion that final judgment always means sentence when, as here, the conviction and sentencing procedures are bifurcated. Indeed, it specifically held in *Brady v. State of Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), that "the general rule that 'Final judgment in a criminal case means sentence....' cannot be applied" to cases in which separate trials are conducted in determining a defendant's guilt and imposing his sentence. *Brady*, 373 U.S. at 85 n. 1, 83 S.Ct. at 1195 n. 1 (citations omitted). As the Court noted, the ground for its holding that the rule is inapplicable to such cases is that the defendant's guilt "is 'independent and unaffected by' what may transpire in a trial at which petitioner can receive only a life imprisonment or death sentence." *Id.* (citations omitted). Thus, *Younger* does not apply to this case.

3. The Court added that "[b]y invoking this procedure ... the prisoner would risk forfeiting consideration of his unexhausted claims in federal court" if a district court found that a second petition containing claims that were unexhausted in the first petition represented an abuse of the writ. *Rose*, 455 U.S. at 520–21, 102 S.Ct. at 1204. Indeed, the Court's recent decision in *McCleskey v. Zant*, 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991), suggests that most petitioners seeking to review their convictions without exhausting their claims regarding their sentences risk losing the opportunity to seek habeas review of their sentences at a later date. Phillips, of course, may not have to bring a second habeas petition because our ultimate decision renders the sentencing issues moot, because the state's sentencing decision is free from constitutional error, or because a life sentence is ultimately imposed. (Under state law, a person convicted of first degree murder with special circumstances can receive only a sentence of death or life imprisonment. *See* Cal.Penal Code § 190.3 (West 1988)).

However, even if Phillips were to bring a second habeas petition limited to challenging his sentence, under the extraordinary circumstances of this case, *see infra* pp. 1034–1037, doing so would not represent an abuse of the writ. *See Burris v. Farley*, 51 F.3d 655, 658 (7th Cir.1995) (suggesting that a defendant in Phillips' situation would have a "persuasive answer" to an accusation that he had abused the writ). We note first that, although neither we nor the Supreme Court has considered whether two separate habeas proceedings may be instituted when a state has adopted a bifurcated process that results in two separate trials regarding the defendant's guilt and punishment, we doubt that the Supreme Court would ordinarily permit separate habeas proceedings in such cases. Accordingly, we do not base our determination as to a separate petition regarding Phillips' sentence on the fact that California's capital cases are bifurcated. Rather, we conclude that a person who has already waited fifteen years for a final decision in order to challenge the constitutionality of that conviction cannot be compelled to choose between bringing a petition regarding that conviction and forfeiting his right to challenge the sentence, on the one hand, and waiting until the sentence is final to file a habeas petition, on the other. Although our conclusion might under other circumstances constitute dictum, we make it a part of our opinion because we believe that Phillips is entitled to a resolution of this question before determining finally whether to attack his conviction separately. As the Seventh Circuit has recently noted, it would be patently unfair to contend that "a prisoner whose principal hope lies in setting aside his conviction must stake his life on prevailing (because, if he loses, he forfeits any entitlement to contest the penalty later)." *Burris*, 51 F.3d at 658.

violating the principle articulated in *Rose.* Indeed, a number of appellate courts, including this one, have held that *Rose* does not require dismissal when the petition before the court contains only exhausted claims. *See, e.g., Powell v. Spalding,* 679 F.2d 163, 166 (9th Cir.1982) (holding that courts may properly review a habeas "petition containing only exhausted issues"); *see also Peoples v. Fulcomer,* 882 F.2d 828, 832 (3d Cir.1989); *Williams v. Maggio,* 727 F.2d 1387, 1389 (5th Cir.1984); *Taylor v. Curry,* 708 F.2d 886, 889 (2d Cir.1983), *cert. denied,* 464 U.S. 1000, 104 S.Ct. 503, 78 L.Ed.2d 694 (1983). Thus, because Phillips sought only to attack his conviction and did not (and could not) seek federal review of claims arising from his sentence, the district court erred in dismissing the petition for failure to exhaust state remedies regarding his sentence.[4]

## C. *Jurisprudential Concerns*

■ We recognize, of course, that a decision to allow Phillips to pursue his habeas petition before the state renders a final decision regarding his sentence implicates many of the prudential concerns outlined in *Rose,* particularly those concerning the dangers of piecemeal litigation. However, we believe that in this case Phillips' right to reasonably prompt constitutional scrutiny of his conviction outweighs any prudential concerns that might exist.

We have consistently recognized that unusual delay in the state courts may justify a decision to protect a prisoner's right to a fair and prompt resolution of his constitutional claims despite the jurisprudential concerns that have led us to decline to review a claim or to require full exhaustion in other cases in which a proceeding related to the federal petition is pending in state court. For example, in *Coe v. Thurman,* 922 F.2d 528 (9th Cir.1991), we held that a prisoner who brings a due process claim arising from delay in the state appellate process is not required to

exhaust state remedies in order to obtain federal review of his claim. Indeed, we noted that extraordinary delay in the state courts can render state corrective processes "ineffective" within the meaning of section 2254(b) and that exhaustion is not required in such cases. *Coe,* 922 F.2d at 530. Similarly, in *Okot v. Callahan,* 788 F.2d 631, 633 (9th Cir.1986), we noted that when a prisoner "receives ineffective relief in state court because of unreasonable delay, he may file a habeas proceeding in federal court. In such cases, federal habeas relief may well be available despite failure to exhaust state remedies." *Okot,* 788 F.2d at 633; *see also Story v. Kindt,* 26 F.3d 402, 405 (3d Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 593, 130 L.Ed.2d 506 (1994); *Burkett v. Cunningham,* 826 F.2d 1208, 1218 (3d Cir.1987).

### 1. *The Significance of Extraordinary Delay in the State Courts*

In the case before us, almost fifteen years have passed since the date of Phillips' conviction. It has been a decade and a half since Phillips was first sentenced to death and ten years since the state supreme court vacated that sentence. More than three years have passed since the second death penalty trial took place.

In addition, as the state concedes, there is no end in sight. It has already taken a significant amount of time for some of the inaccuracies in the trial transcripts to be corrected, and counsel indicated to us at oral argument that further revisions will be necessary. Moreover, it is quite possible that the state supreme court will again find errors in the sentencing decision, and that any state determination as to Phillips' sentence may not become final for an additional number of years. Therefore, if we refuse to consider Phillips' habeas petition now, he might be forced to wait a further indeterminate period of time before he could raise any federal challenge to the constitutionality of his conviction.

---

4. Phillips alleges that he fully exhausted all available state collateral remedies regarding his conviction before filing his habeas petition. However, it appears that Phillips did not properly serve the state in filing this petition, potentially depriving it of an opportunity to contest whether he fully exhausted state remedies for the claims within his petition. If on remand the district court finds that the state was not given an adequate opportunity to raise this issue, the state may contest whether Phillips exhausted these claims and, if not, whether his failure was an excusable one.

The prejudice inherent in such a delay is quite evident. For fifteen years, Phillips has been compelled to remain in prison under a possible sentence of death while being denied the opportunity to establish the unconstitutionality of his conviction. In addition, during so long a delay, there is a substantial likelihood that witnesses will die or disappear, memories will fade, and evidence will become unavailable. In short, the opportunity for a fair retrial diminishes as each day passes.

2. *Balancing Jurisprudential Concerns and Phillips' Constitutional Right*

■ Balanced against the significant harms that may arise from further delay are relatively weak jurisprudential concerns. Comity concerns in this case are practically nonexistent since the state has had a full and fair opportunity to review the validity of Phillips' conviction and its decision regarding that conviction is final. *Cf. Hendricks v. Zenon,* 993 F.2d 664, 672 (9th Cir.1993). Moreover, ordinary concerns for judicial efficiency are not present here; there is little risk of duplicative review since, unlike other types of criminal proceedings, any claims that Phillips might bring regarding his sentence will involve a review of an entirely separate trial and appeal under California's bifurcated system. Finally, while there is some danger that our holding might increase the risk of piecemeal litigation, even that concern is lessened by the fact that we do not know whether a death sentence will ultimately be affirmed by the state supreme court and thus whether there will ever be any ground on which a separate petition could be filed. *See supra* pp. 1034–35 n. 2.

3. *The State's Argument Regarding the* Sherwood *Decision*

■ According to the state, Phillips must remain incarcerated for an indefinite period of years (quite possibly 20 or more) before he can seek federal review of his conviction. Indeed, the state maintains that such a rule is mandated by this court's decision in *Sherwood v. Tomkins,* 716 F.2d 632 (9th Cir. 1983), in which we held:

> When, as in the present case, an appeal of a state criminal conviction is pending, a would-be habeas corpus petitioner must await the outcome of his appeal before his state remedies are exhausted, even where the issue to be challenged in the writ of habeas corpus has been finally settled in the state courts.

*Sherwood,* 716 F.2d at 634.

We find the state's argument to be unconvincing. First and most important, we have explicitly rejected the precise argument made by the state regarding the scope of the *Sherwood* holding in *Coe v. Thurman,* 922 F.2d 528 (9th Cir.1991). In *Coe,* we held that extending the rule articulated in *Sherwood* to cases in which a substantial delay occurred during the state appellate process would directly contravene the language of section 2254, which eliminates the exhaustion requirement in cases in which there exist "circumstances rendering such process ineffective to protect the rights of the prisoner." *Coe,* 922 F.2d at 530 (quoting 28 U.S.C. § 2254). For this reason, we rejected the expansive interpretation of *Sherwood* that the state now urges us to adopt, holding that extraordinary delay in the state appellate process may excuse a failure to exhaust state remedies. As in *Coe,* we conclude that the delay in this case has rendered the state corrective process "ineffective" within the meaning of 28 U.S.C. § 2254(b).

■ Second, *Sherwood* is easily distinguishable. Our decision in that case rested upon the fact that the pending state appeal might result in the reversal of the petitioner's conviction and eliminate the federal question, *Sherwood,* 716 F.2d at 634, thereby rendering any decision by us moot and wasting precious judicial resources. In this case, there is no danger that the pending state appeal will moot our decision since it concerns the sentence, not the conviction underlying it.

The distinction we draw above is supported by our decision in *Blazak v. Ricketts,* 971 F.2d 1408 (9th Cir.1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 1866, 128 L.Ed.2d 487 (1994). In determining whether a district court's holding was a final, reviewable decision, we concluded that a habeas petition concerning a sentence where the is-

sues surrounding the conviction are unresolved is distinguishable from a habeas petition concerning a conviction where the sentencing issues are unresolved. In agreeing to consider a habeas petition challenging a conviction even though the sentencing issues remained unresolved—and thus declining to follow the rule articulated by the Eleventh Circuit in *Clisby v. Jones,* 960 F.2d 925 (11th Cir.1992) (en banc), regarding habeas appeals with unresolved claims—we noted:

> In *Clisby* [where the court declined to consider a habeas petition], the district court granted relief as to the imposition of a sentence of death, but reserved judgment on claims going to the underlying conviction. As a result, the conviction issues remained alive and unresolved regardless of whether the court of appeals affirmed or reversed the district court's decision on the penalty issues.... Unlike *Clisby,* however, in the present appeal we have a complete resolution of all of the alleged constitutional infirmities arising from the relevant set of operative facts relative to conviction. This decision renders the sentencing issues moot.... Thus, unlike *Clisby,* if we affirm, the habeas corpus action is completed.

*Blazak,* 971 F.2d at 1413 (citations omitted).

*Moreover,* a decision to extend *Sherwood* to an unusual case like this one might raise concerns somewhat analogous to those outlined by the Supreme Court in *Corey v. United States,* 375 U.S. 169, 84 S.Ct. 298, 11 L.Ed.2d 229 (1963). In reviewing a statute that enabled a court to hold a defendant in prison while it obtained more detailed information to determine the appropriate sentence, the Court held that the prisoner could appeal his conviction immediately or wait until the final sentence was imposed before appealing. It noted that a rule requiring the defendant to wait until the final sentence was imposed before appealing "would ... forestall any opportunity of a prompt appeal from an underlying criminal conviction ... [and] the imposition of such a mandatory three- or six-month term of imprisonment

before the defendant could file an appeal might raise constitutional problems of significant proportions." *Corey,* 375 U.S. at 173, 84 S.Ct. at 302.[5]

### 4. The Seventh Circuit's Decision

Finally, we note that our holding in this case is hardly a novel one. Indeed, the Seventh Circuit has recently reached precisely the same result in an almost identical case. In *Burris v. Farley,* 51 F.3d 655 (7th Cir. 1995), the Seventh Circuit entertained a habeas petition by a defendant who had fully exhausted state remedies with regard to his conviction but whose sentence was not final at the time he filed the petition. In concluding that the petitioner's failure to exhaust state remedies with regard to his sentence did not preclude it from reaching the merits of his collateral attack upon his conviction, the court held:

> When a state handles his case in a glacial fashion, a prisoner need not wait for global warming to set in. The extended proceeding needed to fix the penalty for murder need not imply that a person with a colorable claim of innocence must cool his heels in prison for a decade or more before being entitled to present to a federal court his challenge to the judgment of conviction.

*Burris,* 51 F.3d at 658. Although we prepared our opinion prior to receipt of the Seventh Circuit's, we could not have summarized our conclusion here in a more concise, or more colorful, fashion than did our fellow circuit.

### CONCLUSION

■ Our decision in this case is a narrow one. We simply hold that Phillips should not be required to wait more than fifteen years for his sentence to be finally resolved before he may challenge the constitutionality of his conviction. We are fully aware of the jurisprudential concerns implicated by our decision, but conclude that they are outweighed by Phillips' interest in a prompt resolution of his constitutional claims. We do not intimate any view as to what other circumstances, if any, might entitle a defendant to seek review

---

**5.** We also note that *Sherwood* did not involve a death penalty case or the bifurcated process that

is applicable in such cases. *See supra* note 2.

of his conviction prior to his sentence becoming final. We are convinced, however, that fifteen years, with no end in sight, is simply too long a period to require a prisoner to await review of what might be an unconstitutional conviction, merely because an entirely separate and independent review of his sentence has not been resolved in a timely fashion. As we noted in *Blazak:*

> [U]nlike habeas grants exclusively on sentencing issues, the grant of a habeas petition because of the constitutional invalidity of a conviction raises concerns that a possible innocent person has been unjustifiably incarcerated on death row for a number of years. *Delaying retrial in such cases, while attorneys fight over a sentence that may no longer exist, risks the perpetuation of a monumental injustice should retrial ultimately result in an acquittal.*

*Blazak,* 971 F.2d at 1414 n. 7 (emphasis added).

For the above reasons, we reinstate the petition. The district court's decision is

REVERSED AND REMANDED.

KLEINFELD, Circuit Judge, concurring:

I concur. My analysis differs in two respects, on abstention and on our purporting to make a holding in a case not before us.

The majority concludes that *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), "is inapplicable," and analyzes the case in terms of "prudential concerns." In my view, *Younger* applies, but contains an equitable exception for cases like this one.

The majority analyzes much of the case in terms of *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). This case is not a *Rose* problem. *Rose* holds that federal courts should dismiss mixed petitions. This is not a mixed petition. The state does not argue that Phillips has included any claims not exhausted in state court in his petition.

In *Younger,* the Supreme Court held that federal courts generally may not enjoin ongoing state criminal proceedings, but leaves room for possible exceptions to the general rule for "bad faith, harassment, or other unusual circumstance that would call for eq-

uitable relief." *Id.* at 54, 91 S.Ct. at 842. *Younger* abstention applies to collateral attacks on convictions as well as petitions for injunctions. *See Braden v. 30th Judicial Circuit Court of Kentucky,* 410 U.S. 484, 489, 93 S.Ct. 1123, 1126, 35 L.Ed.2d 443 (1973). The doctrine generally bars habeas corpus petitions in federal court even where the conviction has been affirmed through all available levels of direct review in the state courts, so long as finality has not yet been achieved regarding the sentence. *Cf. Berman v. U.S.,* 302 U.S. 211, 212, 58 S.Ct. 164, 166, 82 L.Ed. 204 (1937) ("Final judgment in a criminal case means sentence. The sentence is the judgment."); *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 608, 95 S.Ct. 1200, 1210, 43 L.Ed.2d 482 (1975) ("Virtually all of the evils at which *Younger* is directed would inhere in federal intervention prior to the completion of state appellate proceedings, just as surely as they would if such intervention occurred at or before trial."); 28 U.S.C. § 2254 ("in custody pursuant to a judgment of the State court").

We have held that "[w]hen, as in the present case, an appeal of a state criminal conviction is pending, a would-be habeas corpus petitioner must await the outcome of his appeal before his state remedies are exhausted, even where the issue to be challenged in the writ of habeas corpus has been finally settled in the state courts." *Sherwood v. Tomkins,* 716 F.2d 632, 634 (9th Cir.1983). *See also Drury v. Cox,* 457 F.2d 764, 764–65 (9th Cir.1972) ("Our reading of *Younger v. Harris* convinces us that only in the most unusual circumstances is a defendant entitled to have federal interposition by way of injunction or habeas corpus until after the jury comes in, judgment has been appealed from and the case concluded in state courts. Apparent finality of one issue is not enough." (citation omitted)); *Hillery v. Pulley,* 733 F.2d 644 (9th Cir.1984) (affirming *Hillery v. Sumner,* 496 F.Supp. 632, 637 (E.D.Cal. 1980)).

*Younger* abstention is an equitable doctrine, and leaves room for an exception for "unusual circumstance that would call for equitable relief." *Younger,* 401 U.S. at 54, 91 S.Ct. at 755. In the case at bar, Phillips'

confinement apparently began in 1978 when he was arrested, yet by 1992, fourteen years later, when he filed his petition for habeas corpus, the state had not yet issued a final judgment in his case. This delay, combined with California's bifurcation of the guilt phase and the penalty phase of the proceeding, and the finality of the state adjudication of guilt which is the only subject of the petition, allow for application of "unusual circumstances" exception in *Younger*. The "policy against federal interference with state criminal prosecutions," *Younger*, 401 U.S. at 46, 91 S.Ct. at 751, is not implicated, because federal habeas corpus review of the guilt phase will not interfere at all with anything remaining for adjudication in the state courts.

So long a delay between the beginning of confinement and finality is, in *Younger* terminology, "unusual." I agree with the majority that the unusual circumstances in this case allow for the equitable relief of permitting Phillips to petition for a writ of habeas corpus now, instead of waiting for the state to achieve finality on his sentence. Likewise, the habeas statute includes an exception at 28 U.S.C. § 2254(b) for "absence of available State corrective process or the existence of circumstances rendering such process ineffective." The circumstances allow application of this exception. *See Coe v. Thurman*, 922 F.2d 528 (9th Cir.1990).

I do not think we have the power to hold, as the majority opinion purports to do at footnote 2, that if Phillips files a subsequent petition attacking his sentence, he will have demonstrated "good cause" for filing more than one petition. *See McCleskey v. Zant*, 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991). My disagreement on this point has to do with what the terms "holding" and "dictum" mean, not with whether Phillips will have had "good cause." I am inclined to agree with the majority that if Phillips subsequently files a petition challenging his sentence, when it becomes final, he will have "good cause" for not having joined that claim with his attack on his conviction. My objection to calling this appraisal, upon which all three of us agree, a holding, is that it disposes of no issue before us, so is dictum no matter what we call it. A court can only

decide the case before it. Claiming that a proposition is holding does not make it so.

An abuse of the writ case does not arise until the subsequent petition is filed. *See e.g., Burris v. Farley*, 51 F.3d 655, 659 (7th Cir.1995) (petitioner "must meet that defense if and when the state interposes it."). An appellate court cannot command itself to render particular decisions in subsequent cases. Stare decisis requires that like cases be decided alike. It does not enable a court to exercise power over its own judges in future cases by talking about something not dispositive of the case before it. We lack authority to decide the abuse of the writ case which may arise in the future, even though we all agree on how it should probably be decided.

I am puzzled about why the sides are reversed in this case. Usually the man sentenced to death prefers delay, the state, expedition. In this case, the man sentenced to death seeks to accelerate the final disposition in federal court of his petition for a writ of habeas corpus. I am unable to see the harm to the interests of the State of California in granting him this relief.

The writ of habeas corpus is the great writ for testing the constitutionality of confinement. The writ is severely impaired, if confinement may last fourteen years, yet not be ripe for a habeas petition. I agree that this petition should now be entertained.