67 Cal.2d 96 (1967)
THE PEOPLE, Plaintiff and Respondent,
v.
LAWRENCE AKIN JACKSON, Defendant and Appellant.
Crim. No. 8910. 
Supreme Court of California. In Bank. 
July 25, 1967.
 Gladys Towles Root, under appointment by the Supreme Court, and Richard L. Brand for Defendant and Appellant.
 Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Jack E. Goertzen, Deputy Attorney General, for Plaintiff and Respondent.
 TRAYNOR, C. J.
 A judgment convicting defendant of first degree murder and sentencing him to death was affirmed on appeal. (People v. Jackson (1963) 59 Cal.2d 375 [29 Cal.Rptr. 505, 379 P.2d 937].) Thereafter, because of errors condemned in People v. Morse (1964) 60 Cal.2d 631 [36 Cal.Rptr. 201, 388 P.2d 33, 12 A.L.R.3d 810], we issued a writ of habeas corpus and reversed the judgment insofar as it related to penalty. (In re Jackson (1964) 61 Cal.2d 500 [39 Cal.Rptr. 220, 393 P.2d 420].) Upon retrial, defendant waived a jury trial, and the court fixed the penalty at death. This appeal is automatic. (Pen. Code, 1239, subd. (b).) *98
 The essential facts are set forth in our former opinion and need not be repeated. (People v. Jackson, supra, 59 Cal.2d 375.)
 By stipulation the evidence at the penalty retrial consisted of the transcripts of the trial on the issue of guilt and the first trial on the issue of penalty, subject to objections and further testimony. The trial court assumed that Escobedo v. Illinois (1964) 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758], applied and deleted from the transcript all of defendant's extrajudicial admissions and all questions and answers of defendant on cross-examination that related to his interrogation. The court, however, did not delete defendant's other testimony that included seriously damaging admissions.
 [1a] Defendant contends that statements inadmissible under Escobedo v. Illinois, supra, 378 U.S. 478, and People v. Dorado (1965) 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], were introduced into evidence at his trial on the issue of guilt and that both judgments should therefore be reversed.
 We do not reach the question of the admissibility of defendant's statements under Escobedo and Dorado at the trial on the issue of guilt. A judgment that became final before June 22, 1964, the date on which the Supreme Court decided the Escobedo case, cannot be attacked on the basis of that case. (In re Shipp (1965) 62 Cal.2d 547, 549 [43 Cal.Rptr. 3, 399 P.2d 571]; In re Lopez (1965) 62 Cal.2d 368, 372 [42 Cal.Rptr. 188, 398 P.2d 380]; see Johnson v. New Jersey (1966) 384 U.S. 719, 733 [16 L.Ed.2d 882, 892, 86 S.Ct. 1772].)
 [2] A judgment becomes final when all avenues of direct review are exhausted. (People v. Ketchel (1966) 63 Cal.2d 859, 863-865 [48 Cal.Rptr. 614, 409 P.2d 694]; In re Spencer (1965) 63 Cal.2d 400, 405 [46 Cal.Rptr. 753, 406 P.2d 33]; see Tehan v. Shott (1966) 382 U.S. 406, 409 [15 L.Ed.2d 453, 455, 86 S.Ct. 459]; Linkletter v. Walker (1965) 381 U.S. 618, 622 [14 L.Ed.2d 601, 604, 85 S.Ct. 173].) [1b] In the present case the availability of appeal in this court was exhausted on May 1, 1963, when defendant's petition for rehearing was denied (People v. Jackson, supra, 59 Cal.2d 375, 381). He did not seek certiorari. Thus, almost a year before Escobedo was decided, defendant had exhausted all remedies for direct review of the original proceedings determining his guilt and the penalty. Thereafter this court granted defendant's petition for habeas corpus and reversed the judgment only on the issue of penalty, thereby affording a collateral remedy for a *99 retrospective application of People v. Morse, supra, 60 Cal.2d 631. The scope of this retrial is a matter of state procedure under which the original judgment on the issue of guilt remains final during the retrial of the penalty issue and during all appellate proceedings reviewing the trial court's decision on that issue. (See In re Gaines (1965) 63 Cal.2d 234 [45 Cal.Rptr. 865, 404 P.2d 473]; In re Lopez, supra, 62 Cal.2d 368, 370.)
 [3a] Defendant also attacks the judgment on the issue of guilt on the ground that his extrajudicial statements were involuntary even if Escobedo does not apply. (See Johnson v. New Jersey, supra, 384 U.S. 719, 730 [16 L.Ed.2d 882, 890].) He contends that he was given no warnings, that his request to consult with counsel was ignored, that he was allowed to see his mother and aunt in return for a promise to confess, and that he was urged to confess by the district attorney who purported to be advising him.
 The trial court in the original trial considered the issue of voluntariness in a full and fair hearing. It heard substantial evidence, including defendant's testimony, that his statements were voluntary, and it admitted them into evidence over objection. Neither on his appeal (People v. Jackson, supra, 59 Cal.2d 375, 377) nor in his petition for habeas corpus (In re Jackson, supra, 61 Cal.2d 500) did defendant challenge the voluntariness of his statements.
 On this appeal from the judgment on the issue of penalty, the attack on the judgment on the issue of guilt is governed by the rules applicable to a collateral attack. (People v. Polk (1965) 63 Cal.2d 443, 448 [47 Cal.Rptr. 1, 406 P.2d 641].) [4] "We have consistently held that an issue which is raised in the trial court, and upon which conflicting testimony develops, cannot serve as a basis for habeas corpus; we cannot sanction piecemeal presentation or split adjudication of such issues. ..." (In re Shipp, supra, 62 Cal.2d 547, 552, cert. den. (1966) 382 U.S. 1012 [15 L.Ed.2d 528, 86 S.Ct. 623].) [5] Moreover, failure to exercise "readily available remedies will ordinarily constitute such a deliberate bypassing of orderly state procedures as to justify denial of federal as well as state collateral relief." (In re Sterling (1965) 63 Cal.2d 486, 489 [47 Cal.Rptr. 205, 407 P.2d 5]; In re Shipp, supra, 62 Cal.2d 547, 554-555; Pen. Code, 1475.) [fn. 1] [3b] Defendant *100 offers no explanation for his failure to raise the issue whether his statements were voluntary at the prior proceedings. Under these circumstances the issue may not now be raised.
 [6] With respect to the second trial on the issue of penalty, defendant contends that the court erred in not deleting all of his testimony at the first trial. He correctly points out that such testimony must be deemed a product of the admission of his statements into evidence (People v. Spencer (1967) 66 Cal.2d 158, 164-168 [57 Cal.Rptr. 163, 424 P.2d 715]) and that if those statements were inadmissible at his penalty retrial, his testimony was also inadmissible.
 Whether those statements were inadmissible turns on whether Escobedo and Dorado were applicable to defendant's penalty retrial, which began on October 16, 1964. Although defendant's conviction was final before June 22, 1964, when Escobedo was decided, his retrial on the issue of penalty occurred after that date. Under these circumstances we are persuaded that People v. Doherty (1967) ante, p. 9 [59 Cal.Rptr. 857, 429 P.2d 177], is controlling and that Escobedo and Dorado were therefore applicable.
 Defendant's extrajudicial statements were taken in violation of Escobedo and Dorado, and his testimony must be deemed a product of the admission of those statements. (People v. Spencer, supra, 66 Cal.2d 158, 168.) We cannot say beyond a reasonable doubt that the error in admitting that testimony at the penalty retrial was harmless. (Chapman v. California (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 711, 87 S.Ct. 824].)
 The judgment imposing the death penalty is reversed and the cause remanded for retrial on the issue of penalty only.
 Tobriner, J., Burke, J., Sullivan, J., and White, J., [fn. *] concurred.
 PETERS, J.
 Concurring and dissenting.
 I agree with the majority insofar as they reverse the judgment *101 imposing the death penalty. I dissent from that portion of the majority opinion that refuses to consider the impact of the errors on the issue of guilt.
 This case has been before us several times. On April 2, 1963, we affirmed the first degree murder judgment imposing the death penalty (People v. Jackson, 59 Cal.2d 375 [29 Cal.Rptr. 505, 379 P.2d 937]). Thereafter, on July 6, 1964, on habeas corpus, a new penalty trial was ordered because of errors condemned in People v. Morse, 60 Cal.2d 631 [36 Cal.Rptr. 201, 388 P.2d 33, 12 A.L.R.3d 810]. The judgment was affirmed in all other respects (In re Jackson, 61 Cal.2d 500 [39 Cal.Rptr. 220, 393 P.2d 420]). At the new penalty trial, a jury was waived, and again the death penalty was imposed. The present appeal is from that judgment and is automatic. (Pen. Code, 1239, subd. (b).)
 The appellant contends that at both the original guilt trial and at the retrial of the penalty issue there were admitted into evidence admissions and a confession in violation of the rules established in Escobedo v. Illinois, 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758], and People v. Dorado, 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], and that such errors were highly prejudicial.
 The majority find that such errors occurred and require a reversal of the penalty issue, but also hold that such errors cannot be legally considered on the guilt issue. With this latter conclusion I disagree.
 It is established law that judgments which become "final" prior to the date of Escobedo (June 22, 1964) may not be attacked on the basis of Escobedo or Dorado. (In re Lopez, 62 Cal.2d 368, 372 [42 Cal.Rptr. 188, 398 P.2d 380].) The rule defining finality for this purpose is stated by the United States Supreme Court in Linkletter v. Walker, 381 U.S. 618, 622, in footnote 5 [14 L.Ed.2d 601, 604, 85 S.Ct. 1731]: "By final we mean where the judgment of conviction was rendered, the availability of appeal exhausted, and the time for petition for certiorari had elapsed. ..."
 In the present case the availability of appeal was exhausted on May 1, 1963, when defendant's petition for rehearing was denied by this court (People v. Jackson, supra, 59 Cal.2d 375, 381), and, since certiorari was not sought by defendant, the time for petitioning for certiorari elapsed 90 days thereafter. [fn. 1] *102 Thus, under these rules, there can be no doubt that at one point the issue of guilt and the issue of penalty were both "final" before Escobedo was decided. But we recalled the remittitur, at least on the penalty issue. This reopened the penalty issue and required a retrial of that issue, which occurred after Escobedo. The real question with which we are now concerned is whether that action had any effect on the guilt issue so far as certiorari is concerned.
 In several cases decided by this court we have apparently held that a determination of guilt is final for some purposes even though we reverse for a new penalty trial. We have held that if on the penalty retrial an attack is made on the guilt issue it is a collateral attack. (People v. Polk, 63 Cal.2d 443, 447-448 [47 Cal.Rptr. 1, 406 P.2d 641]; cf. People v. Terry, 61 Cal.2d 137, 151 [37 Cal.Rptr. 605, 390 P.2d 381]; People v. Love, 56 Cal.2d 720, 725 [16 Cal.Rptr. 777, 17 Cal.Rptr. 481, 366 P.2d 33, 809].) But we are not concerned with these generalizations. We are concerned with what the United States Supreme Court considers as "final" for the purposes here involved. That court has determined that finality for such purposes depends on when the time for petitioning for certiorari to that court has elapsed. Thus, the question of whether a reversal of the penalty issue also affected the finality of the judgment of guilt depends not upon our own definition of finality but upon whether the United States Supreme Court would treat the issue of guilt as reopened on a petition for certiorari properly filed from an affirmance after a penalty retrial.
 There can be no doubt that affirmance of a judgment of guilt is considered a "final" judgment, so as to permit an immediate review by the United States Supreme Court, even though a new trial is ordered on the penalty issue. (Brady v. Maryland, 373 U.S. 83, 85, fn. 1 [10 L.Ed.2d 215, 217, 83 S.Ct. 1194].) But this is not decisive. The high court has also held that, even though such a first review is possible on the issue of guilt, after a final determination of the penalty the issues involved on the guilt trial may be reviewed on the review of the penalty trial. This was the precise holding of Corey v. United States, 375 U.S. 169 [11 L.Ed.2d 229, 84 S.Ct. 298], cited with approval by this court in People v. Ketchel, 63 Cal.2d 859, 864 [48 Cal.Rptr. 614, 409 P.2d 694]. There *103 defendant was sentenced twice for the same crime under a federal statute providing that an initial sentence may be rendered until more detailed information as a basis for determining final sentence is available. Recognizing that certiorari was available to review the first sentence, the court held that as a practical matter, the severity of the final sentence imposed is often a major factor in deciding whether to appeal, and that defendant had the option of appealing from either sentence because Congress did not intend to subject a defendant to the burden of having to choose whether to appeal without first knowing his punishment. The court stated that "Long-accepted and conventional principles of federal appellate procedure require recognition of the defendant's right to await the imposition of final sentence before seeking review of the conviction. That is the general rule." (Corey v. United States, supra, 375 U.S. at p. 176 [11 L.Ed.2d at p. 234].)
 By this rule, the United States Supreme Court has recognized the decisive importance of knowing what the final sentence is before deciding whether to seek certiorari. Obviously the high court would not require one whose conviction is affirmed but the penalty reversed to choose once and for all right then whether to petition for certiorari on the guilt issue. In fact, it has been held in this state that where the issue of guilt is final but not the issue of penalty, the issue of guilt can be attacked on Escobedo- Dorado grounds. (People v. Ketchel, supra, 63 Cal.2d 859, 863-865.) In the present case the penalty judgment as well as the guilt judgment was "final" before Escobedo, so that the defendant knew his punishment at the time he was required to determine whether to petition for certiorari. He did not do so. But then, for proper reasons, we recalled the remittitur, and reopened the penalty issue. The present status of the case is the same as if we had ordered a new penalty trial on the first appeal. When we recalled our remittitur so as to reverse as to the penalty, the remittitur relating to the guilt trial was also necessarily recalled. [fn. 2] It is quite significant that without passing directly on the issue, it has been our practice to again affirm the judgment of guilt after reversing the penalty determination. (In *104 re Jackson, supra, 61 Cal.2d 500, 508.) This would be meaningless if the guilt issue were not before us.
 Under both state and federal law a final judgment from which an appeal may be taken in a criminal case is the sentence, that is, the judgment is the sentence. (Corey v. United States, supra, 375 U.S. 169, 174 [11 L.Ed.2d 229, 233]; People v. Sweeney, 55 Cal.2d 27, 33, fn. 1 [9 Cal.Rptr. 793, 357 P.2d 1049].) This equation of the judgment with the sentence strongly suggests that when a sentence is reversed no matter when, the United States Supreme Court will deem the whole judgment, including the conviction, to be reopened for the purpose of direct attack by writ of certiorari.
 It follows, of course, that since the penalty determination is not yet final, defendant may attack the guilt trial on the ground that statements were admitted in violation of Escobedo and Dorado. [fn. 3] Because the case on the guilt issue was tried before Escobedo, defendant's failure to object to the admission of his statements does not preclude him from raising the question on appeal. (People v. Hillery, 62 Cal.2d 692, 711 [44 Cal.Rptr. 30, 401 P.2d 382].)
 If the guilt trial is reopened by the granting of a new trial as to penalty, as I believe should be done, there can be no doubt that evidence was admitted during the guilt trial that violated the principles of Escobedo and Dorado. The question of whether such errors were prejudicial should, in my opinion, be reviewed on this appeal. That they were prejudicial seems to me clear beyond a possibility of a doubt. My reasons need not now be set forth in view of the majority's refusal to even consider the question of error.
 Thus, while I agree with the majority in the holding that the judgment insofar as it relates to penalty must be reversed, I disagree with the majority in holding that the propriety of the guilt determination should not also be reversed.
 McCOMB, J.
 I dissent. I would affirm the judgment imposing the death penalty.
NOTES
[fn. 1] 1. See Fay v. Noia (1963) 372 U.S. 391, 438 [9 L.Ed.2d 837, 869, 83 S.Ct 822]; Sanders v. United States (1963) 373 U.S. 1, 17-18 [10 L.Ed.2d 148, 162-163, 83 S.Ct. 1068]; De Welles v. United States (7th Cir. 1967) 372 F.2d 67, 68-69; Thornton v. United States, 368 F.2d 822, 825, 829; Campbell v. United States (7th Cir. 1966) 355 F.2d 394, 395; Nash v. United States (5th Cir. 1965) 342 F.2d 366, 368; Vena v. Warden, State Prison (Conn. 1966) 225 A.2d 802; Dunek v. District Court of Lee County (Iowa 1966) 140 N.W.2d 372, 374; Brown v. Wingo (Ky. 1965) 396 S.W.2d 785; Commonwealth v. Cavell (1967) 423 Pa. 597 [225 A.2d 673]; 28 U.S.C.A. 2244, 2254 (amended by 80 Stat. 1104 (1966)).
[fn. *] *. Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.
[fn. 1] 1. The 90-day period runs from the date of filing of the opinion unless a timely petition for rehearing is filed, in which case it runs from the date of the denial of the petition for rehearing. (Market Street Ry. Co. v. Railroad Com., 324 U.S. 548, 550-552 [89 L.Ed. 1171, 1176-1177, 65 S.Ct. 770].)
[fn. 2] 2. When a remittitur is recalled the court does not "resume" jurisdiction that was lost by the issuance of the remittitur after the first appeal. The theory is that because of the irregularity jurisdiction was never lost. Once recalled, the decision on the first appeal is a nullity. (Isenberg v. Sherman, 214 Cal. 722, 726 [7 P.2d 1006]; Rowland v. Kreyenhagen, 24 Cal. 52, 59.)
[fn. 3] 3. It is true that in In re Lopez, supra, 62 Cal.2d 368, where we reversed the penalty trial because of errors condemned in People v. Morse, supra, 60 Cal.2d 631, we held that the judgment of guilt may not be attacked on Escobedo-Dorado grounds because the guilt judgment had been affirmed prior to the decision in Escobedo. Thus, factually, the problem involved here was also there involved, but the legal effect of the reversal as to penalty, the point here discussed, was not considered. It is elementary law that an opinion is not an authority for any proposition not considered in it.