Filed 4/15/25  P. v. Marez CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C099730 |
| Plaintiff and Respondent, | (Super. Ct. No. 13F06134) |
| v. | |
| JASON MAREZ, | |
| Defendant and Appellant. | |

During a resentencing proceeding under Penal Code section 1172.75,[1] the trial court resentenced defendant Jason Marez to 51 years in prison, including eight months for a gang enhancement under section 186.22.  Defendant appeals his resentencing, arguing we must reverse and remand for a new trial on the gang enhancement under Assembly Bill No. 333 (2021-2022 Reg. Sess.) (Assembly Bill 333) (Stats. 2021,

---

[1] Further undesignated statutory references are to the Penal Code.

1

ch. 699) that amended section 186.22 to impose new requirements for proving gang offenses and enhancements since defendant's trial.

Exercising our discretion to reach the issue, and in light of our Supreme Court's recent decision in *People v. Lopez* (2025) 17 Cal.5th 388 (*Lopez*), we agree the trial court should have applied Assembly Bill 333 during the resentencing proceeding because defendant's criminal judgment was no longer final following the recall and resentencing under section 1172.75. We therefore vacate the gang enhancement and remand the case to the trial court for resentencing under Assembly Bill 333. On remand, the prosecution may retry defendant on the gang enhancement if it so chooses. The judgment is otherwise affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

In September 2013, defendant brandished and fired a revolver with a wooden handle from a red Dodge Neon at a nearby car occupied by two individuals, one of whom was wearing a blue baseball cap.[2] A few days later, police detained defendant and found in his possession a loaded revolver. The Dodge Neon was recovered and tested positive for gunshot residue.

At trial, a Norteño criminal street gang expert explained that Norteños are primarily associated with the color red while the Sureños, a rival gang, are associated with the color blue. The gang expert opined that defendant was a member of the Del Paso Heights Norteños and that he committed the offenses for the gang's benefit. The gang expert also testified about the primary activities of the Norteños, including murder, assault with a firearm, shootings, possession of illegal firearms, and narcotics sales, as well as two predicate shooting offenses carried out by Norteño gang members in the

---

[2] We considered defendant's request to take judicial notice of the record in his direct appeal in *People v. Marez* (Feb. 23, 2017, C081630) (nonpub. opn.) (*Marez*) as a motion to incorporate the record in *Marez* by reference and granted it as such.

2

Sacramento area in 2010 and 2013. Committing violent crimes, the expert explained, enhanced the gang's reputation and instilled fear in rivals and the community.

Defendant testified on his own behalf and claimed, among other things, that he had never been in a gang. He merely lived in a neighborhood where gangs were present.

A jury found defendant guilty of two counts of assault with a firearm (§ 245, subd. (a)(2); counts one & two), attempted murder (§§ 664, 187, subd. (a); count three), discharge of a firearm at an occupied motor vehicle (§ 246; count four), and two counts of being a felon in possession of a firearm (§ 29800, subd. (a)(1); counts five & six). For the assault, attempted murder, and firearm discharge offenses, the jury found multiple firearm enhancements true (§§ 12022.5, subd. (a), 12022.53, subd. (c)). For the felon in possession offenses, the jury found true defendant committed each offense for the benefit of a criminal street gang (former § 186.22, subd. (b)(1)).[3] The trial court found that defendant had a prior strike (§§ 667, subds. (a)-(i), 1170.12), a prior serious felony (§ 667, subd. (a)), and had served two prior prison terms (former § 667.5, subd. (b)) for two previous vehicle theft convictions. Defendant was sentenced to an aggregate term of 60 years 4 months in state prison.

Defendant appealed, and this court reversed one count of being a felon in possession of a firearm (count six) but otherwise affirmed the judgment. (*Marez, supra*, C081630.) Defendant was subsequently resentenced to a total determinate term of 58 years in prison that included one year for the gang enhancement in count five and one year for each of the two prior prison terms.

In 2023, the California Department of Corrections and Rehabilitation (CDCR) identified defendant as someone serving a sentence that included a prior prison term

---

[3] The trial court declared a mistrial on the gang allegations attached to counts one through four.

enhancement under section 667.5, subdivision (b). The trial court appointed counsel and ordered briefing from the parties.

The People argued the trial court should strike the now-invalid prior prison term enhancements but otherwise leave the remainder of defendant's sentence intact. Defendant argued the court should dismiss the invalid prison prior enhancements, exercise its discretion under section 1385 and *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 to strike his prior strike convictions, strike the firearm and gang enhancements, and impose the low term given his childhood trauma and mental health and substance abuse issues. Defendant requested an aggregate prison sentence of 21 years 4 months. He attached certificates of completion and CDCR records showing his rehabilitative efforts while incarcerated, as well as a statement from defendant's brother detailing their difficult childhood.

At a resentencing hearing in October 2023, the prosecution, without objection, filed a third amended information alleging several circumstances in aggravation, and the trial court found the aggravating factors true beyond a reasonable doubt in a court trial. The parties then reiterated their preferred sentence, and defendant addressed the court expressing his remorse for the crimes but arguing that the sentence originally imposed was too long. The court ultimately struck defendant's two no-longer valid prior prison term enhancements but declined to strike defendant's prior strike conviction or the firearm and gang enhancements, finding it was not in the interest of justice because defendant posed a danger to the public. The court resentenced defendant to an aggregate term of 51 years in prison, including a term of eight months for the count five gang enhancement (§ 186.22, subd. (b)(1)).

Defendant timely appealed.

# DISCUSSION

## I

### *Resentencing under Section 1172.75*

In 2021, the Legislature enacted Senate Bill No. 483 (2021-2022 Reg. Sess.) (Senate Bill 483) (Stats. 2021, ch. 728, § 3) that added former section 1171.1, now renumbered as section 1172.75. (Stats. 2022, ch. 58, § 12.) (*People v. Burgess* (2022) 86 Cal.App.5th 375, 379-380.) Section 1172.75 provides that "[a]ny sentence enhancement that was imposed prior to January 1, 2020, pursuant to subdivision (b) of [s]ection 667.5, except for any enhancement imposed for a prior conviction for a sexually violent offense . . . is legally invalid." (§ 1172.75, subd. (a).) The statute also provides a process for recall of sentences rendered invalid by Senate Bill 483 and resentencing of affected defendants. (§ 1172.75, subd. (b).)

After verifying that a judgment contains a prior prison term enhancement that is no longer valid under section 1172.75, subdivision (a), a trial court "shall recall the sentence and resentence the defendant" to a lesser sentence than the one originally imposed, unless the court finds by clear and convincing evidence that imposing a lesser sentence would endanger public safety. (§ 1172.75, subds. (c), (d)(1).) At resentencing, "[t]he court shall apply the sentencing rules of the Judicial Council and apply any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing." (§ 1172.75, subd. (d)(2).)

In this case, defendant's judgment contained invalid prior prison term enhancements based upon previous vehicle theft convictions, and the trial court properly dismissed those enhancements under section 1172.75. The issue on appeal is whether the trial court erred during resentencing by not also applying Assembly Bill 333, which changed the requirements for proving a gang enhancement like the one attached to count five here.

5

According to defendant, the matter must be reversed and remanded for a new trial on the gang enhancement under Assembly Bill 333. The People argue, and defendant concedes that he did not raise Assembly Bill 333 below. Nevertheless, defendant urges this court to exercise its discretion to decide the issue if forfeited (see *People v. Scott* (1994) 9 Cal.4th 331, 356 [generally complaints about how a trial court exercises its sentencing discretion may not be raised for the first time on appeal]), or, alternatively, he argues that defense counsel's failure to raise the issue constituted ineffective assistance of counsel. (See e.g., *Strickland v. Washington* (1984) 466 U.S. 668, 686.) We exercise our discretion to address the merits of defendant's Assembly Bill 333 argument and decline to reach his ineffective assistance claim. (*People v. Monroe* (2022) 85 Cal.App.5th 393, 400; *People v. Williams* (1998) 17 Cal.4th 148, 161-162, fn. 6.)

## II

### *Application of Assembly Bill No. 333*

Effective January 1, 2022, Assembly Bill 333 made several significant changes to subdivisions (e) and (f) of section 186.22. These substantive statutory changes apply retroactively to nonfinal judgments. (*People v. Tran* (2022) 13 Cal.5th 1169, 1206-1207; see *In re Estrada* (1965) 63 Cal.2d 740 [if an ameliorative statute is silent regarding its retroactivity, a presumption exists that the Legislature intended the new law to apply as broadly as constitutionally permissible to all nonfinal cases].) Assembly Bill 333 also amended section 1109 that requires bifurcation of gang enhancement allegations and gang participation offenses upon a defendant's request. (§ 1109, subds. (a)-(b).) Our Supreme Court has now held that section 1109 does not apply retroactively. (See *People v. Burgos* (2024) 16 Cal.5th 1, 8 [concluding the inference of retroactivity under *Estrada* did not extend to section 1109].)

As relevant here, Assembly Bill 333 substantively narrowed the definition of a "criminal street gang" to require that any gang be an "ongoing, *organized* association or group of three or more persons." (§ 186.22, subd. (f), italics added.) It also changed

6

former subdivision (f)'s requirement that a gang's members "individually *or collectively* engage in" a pattern of criminal activity in order to constitute a "criminal street gang" to now require that any such pattern be "*collectively* engage[d] in" by members of the gang. (§ 186.22, subd. (f), italics added.)  Assembly Bill 333 narrowed the definition of a "pattern of criminal activity" by requiring that (1) the last offense used to show a pattern of criminal gang activity occurred within three years of the date that the currently charged offense is alleged to have been committed; (2) the offenses were committed by two or more gang "members," as opposed to just "persons"; (3) the offenses commonly benefitted a criminal street gang; and (4) the offenses establishing a pattern of gang activity must be ones other than the currently charged offense.  (§ 186.22, subds. (e)(1), (2).)  And it narrowed what it means for an offense to have commonly benefitted a street gang, requiring that any "common benefit" be "more than reputational."  (§ 186.22, subd. (g).)

In *Clark*, our Supreme Court resolved a conflict regarding the meaning of the collective engagement requirement in amended subdivisions (e) and (f) of section 186.22, rejecting the notion that each predicate offense had to be committed by two or more gang members acting together.  (*People v. Clark* (2024) 15 Cal.5th 743, 749, 753-757.)  To show collective engagement, our Supreme Court held that the prosecution must "link[] the two predicate offenses to the gang as an organized, collective enterprise."  (*Id.* at p. 761.)  That is, there must be "a connection, or nexus, between an offense committed by one or more gang members and the organization as a whole."  (*Id.* at p. 762.)  "This organizational nexus may be shown by evidence linking the predicate offenses to the gang's organizational structure, meaning its manner of governance; its primary activities; or its common goals and principles."  (*Ibid.*)

The changes Assembly Bill 333 made to section 186.22 and *Clark*'s interpretation of the organizational nexus requirement under the statute as amended, effectively added new elements to the statute and altered the showing necessary to establish gang offenses

7

and allegations like the gang enhancement attached to count five here. It is undisputed that the jury was not instructed on these new elements at the time of defendant's trial in 2016.

Defendant contends that once the trial court recalled his sentence under section 1172.75, his judgment was no longer final, and the trial court was obligated to apply Assembly Bill 333 to the gang enhancement found true by the jury. The People disagree, arguing that Assembly Bill 333's new proof requirements do not apply retroactively to an otherwise final judgment that is subject to resentencing under section 1172.75. They contend that defendant's judgment of conviction became final in 2017 after the remittitur issued in his direct appeal. Defendant's resentencing under section 1172.75 in October 2023, they assert, did not render the gang-related enhancement findings nonfinal. We conclude defendant has the better argument.

In an analogous context, this court held in *People v. Trent* (2023) 96 Cal.App.5th 33, rev. granted Dec. 20, 2023, S282644, that resentencing under section 1172.6 rendered a gang offense nonfinal for purposes of retroactive application of Assembly Bill 333's amendments to section 186.22. Other courts have found the same in varying circumstances. (See e.g., *In re A.M.* (2024) 102 Cal.App.5th 557, 569 [once the habeas court conditionally reversed the judgment in the case, the case was nonfinal and Assembly Bill 333's amendments to the gang-murder special circumstance applied]; *People v. Salgado* (2022) 82 Cal.App.5th 376, 380-381 [holding that Assembly Bill 333 applies during resentencing where sentence was recalled under § 1172.1]; *People v. Sek* (2022) 74 Cal.App.5th 664, 667 [holding that Assembly Bill 333 applied retroactively on resentencing].) In *People v. Mitchell* (2023) 97 Cal.App.5th 1127, 1140-1141, rev. granted Feb. 21, 2024, S283474, for example, the appellate court held that the defendant there was entitled to the retroactive benefits of Assembly Bill 333 after his convictions, including one for active gang participation and numerous gang enhancements (*id.* at p. 1130), were affirmed but his sentence was vacated and the matter was remanded for a

full resentencing. The *Mitchell* court rejected the People's assertion that the issue of the defendant's guilt was final even though the validity of the defendant's sentence was still being adjudicated. (*Id.* at pp. 1140-1141.)

On the other hand, as the People point out, in *People v. Lopez* (2023) 93 Cal.App.5th 1110, 1120, rev. granted Nov. 15, 2023, S281488, the appellate court found that Assembly Bill 333 could not be applied following a conditional reversal after a second appeal. While the court there recognized that the defendant's judgment upon remand was nonfinal for purposes of *Estrada,* it found the trial court had no jurisdiction to readjudicate the gang enhancements based on the terms of the remittitur, which only permitted the trial court to consider exercising new discretion to strike the defendant's prior serious felony enhancements and firearm enhancements. (*People v. Lopez*, at pp. 1113, 1119-1120 [declining to follow *Salgado*].)

After briefing was completed in this case, our Supreme Court reversed the judgment in *People v. Lopez.* (See *Lopez, supra*, 17 Cal.5th 388.) Our Supreme Court framed the issue in *Lopez* as follows: whether a judgment, or part of it, becomes final for *Estrada* retroactivity purposes if an appellate court has affirmed a defendant's convictions but remanded the matter to address sentencing issues. (*Lopez*, at p. 392) The court held the answer was "no," reasoning that "[a] criminal case is only reduced to a singular, final judgment following the conclusion of the entire criminal case or prosecution." (*Lopez*, at p. 392].) "Thus, a criminal case in which the sentence is not yet final, including one in which an appellate court has affirmed the conviction and remanded for reconsideration of sentencing-related issues, is not final for purposes of *Estrada*, and the benefits of supervening ameliorative legislation apply retroactively." (*Lopez*, at pp. 392-393.) The fact that the remittitur reversed and remanded to correct a specific sentencing error was not determinative of whether the ameliorative benefits of Assembly Bill 333 applied retroactively to the defendant's case. (*Lopez*, at pp. 399 – 400)

9

The *Estrada* finality inquiry, *Lopez* explained, " 'focus[s] on whether the criminal prosecution or proceeding *as a whole* is complete." (*Lopez, supra*, 17 Cal.5th. at p. 392 citing *People v. Esquivel* (2021) 11 Cal.5th 671, 679.) For *Estrada* purposes, the "judgment" means the judgment of conviction *and* the sentence. (See *People v. McKenzie* (2020) 9 Cal.5th 40, 46 [in criminal matters, the terms judgment and sentence are generally considered " ' "synonymous" ' " and there can be no judgment of conviction without a sentence].) A "judgment" becomes final when the judgment of conviction is rendered, the availability of appeal is exhausted, and the time for petitioning for certiorari has expired. (*People v. Padilla* (2022) 13 Cal.5th 152, 162 (*Padilla*).) However, a judgment that was final at one point can become nonfinal when reopened. (*Id.* at pp. 161-162.)

Notably, the Supreme Court in *Lopez* rejected the same argument that the People advance here—that the part of defendant's judgment of conviction related to the gang enhancement can remain final even though his sentence has been vacated. (*Lopez, supra*, 17 Cal.5th at p. 397.) The Attorney General in *Lopez* posited that the defendant's gang enhancement was affirmed and final on direct appeal at the time Assembly Bill 333 went into effect, and that under such circumstances, applying the new legislation during resentencing "would amount to relitigating guilt where the 'guilt determination' is final." (*Ibid.*)

In arguing that a judgment can have final and nonfinal parts for *Estrada* purposes, the Attorney General relied on *People v. Wilson* (2023) 14 Cal.5th 839 (*Wilson*), *People v. Jackson* (1967) 67 Cal.2d 96 (*Jackson*), and *Padilla, supra*, 13 Cal.5th 152. (*Lopez, supra*, 17 Cal.5th at pp. 398-399].) The People do the same here. But as *Lopez* explained, none of the cited cases support the notion that a judgment can have both final and nonfinal components for *Estrada* retroactivity purposes.

*Wilson* "addressed the meaning of a final 'conviction' as provided in section 1172.6 rather than the meaning of finality for purposes of *Estrada*." (*Lopez, supra*,

17 Cal.5th at p. 398.) The defendant in *Wilson* sought retroactive application of an ameliorative change in the law—section 1172.6, subdivision (g)—to his capital case after our Supreme Court affirmed his murder conviction but vacated the initial death penalty verdict because a juror had been improperly discharged during penalty deliberations; after retrying the penalty phase, a jury again imposed death. (*Wilson, supra*, 14 Cal.5th at pp. 844-845.) On appeal for the second time, our Supreme Court considered whether the defendant could use the procedural mechanism in section 1172.6, subdivision (g) to challenge the validity of his murder conviction on direct appeal when that mechanism is only available to individuals whose "conviction is not final." (§ 1172.6, subd. (g); *Wilson*, at pp. 870-871.) After noting the case's complicated procedural posture where the court had affirmed defendant's murder conviction nearly 15 years earlier during the first appeal, the court surmised that the defendant's murder conviction appeared to have become final, but it nevertheless declined to resolve the issue and applied section 1172.6, subdivision (g) to the defendant's case. (*Wilson*, at pp. 870-871.) Because *Wilson* "did not reach the issue presented here" (*Lopez*, at p. 398), the People's contention that *Wilson* "provides some additional support for the conclusion that guilt and punishment are untethered when retroactively applying new laws to final judgments" is not persuasive.

In *Jackson*, another death penalty case, our Supreme Court applied an intervening decision, *Escobedo v. Illinois* (1964) 378 U.S. 478, to the defendant's reopened penalty verdict while refraining from applying the same decision to his unopened guilty verdict. (*Jackson, supra*, 67 Cal.2d at p. 99.) *Lopez* found that *Jackson* did not provide useful guidance on the *Estrada* retroactivity issue given that it arose in a readily distinguishable context. (*Lopez, supra*, 17 Cal.5th at p. 398.) According to *Lopez*, "*Jackson* did not involve an interpretation of *Estrada*, it predated *Padilla*, it arose on habeas corpus, and it concerned the reopening of a penalty judgment in the distinct context of a bifurcated capital proceeding." (*Ibid*.) For the same reasons, the People's reliance on *Jackson* here is unavailing.

*Padilla* addressed the retroactive effect of Proposition 57, the Public Safety and Rehabilitation Act of 2016 (Cal. Const., art. I, § 32), which limited the circumstances under which certain juvenile offenders could be tried in adult criminal court. (*Lopez, supra*, 17 Cal.5th at p. 398.) The court there considered *Estrada* retroactivity in the context of a judgment that became nonfinal after the defendant's sentence was vacated on habeas corpus and the case was returned to the trial court for imposition of a new sentence. (*Padilla, supra*, 13 Cal.5th at p. 158.) In referring to the scope of the proceedings that were reopened through the defendant's habeas corpus petition, the *Padilla* court described the defendant's punishment as the "nonfinal part of his judgment." (*Id.* at p. 170.)

But, as *Lopez* clarified, *Padilla* "used the phrase 'nonfinal part' to distinguish the portion of [the defendant's] judgment that remained undisrupted by the retroactive application of the ameliorative law (Prop. 57)." (*Lopez, supra*, 17 Cal.5th at p. 399.) *Padilla*, however, did not "create bifurcated judgments or otherwise alter the premise that 'judgment of conviction' and 'sentence' are understood generally as synonymous in criminal actions." (*Ibid.*, citing *People v. McKenzie, supra*, 9 Cal.5th at p. 46.) Nor did it change the principle under *Estrada* that " '[t]he cutoff point for application of ameliorative amendments is the date when the entire case or prosecution is reduced to a final judgment.' " (*Lopez*, at p. 399, citing *People v. Mitchell, supra*, 97 Cal.App.5th at p. 1139.)

Here, once the trial court determined defendant was entitled to be resentenced under section 1172.75 (§ 1172.75, subd. (c) [if the trial court determines a judgment includes an invalid prior prison term enhancement, "the court shall recall the sentence and resentence the defendant"]), the result was vacatur of the previously imposed sentence, which reopened the finality of defendant's judgment. Under *Lopez*, defendant's case is no longer final for purposes of *Estrada* and he is entitled to retroactive application of Assembly Bill 333's substantive changes. (See *Auto Equity Sales, Inc. v. Superior*

12

*Court of Santa Clara County* (1962) 57 Cal.2d 450, 455 [decisions of state Supreme Court "are binding upon and must be followed by all the state courts of California"].)

## DISPOSITION

The jury's true finding that defendant committed count five for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)) is vacated.  The cause is remanded to provide the People an opportunity to retry the vacated gang finding in compliance with amended section 186.22.  If the People elect not to do so, the trial court shall resentence defendant accordingly.  The judgment is otherwise affirmed.

  /s/
MESIWALA, J.

We concur:

  /s/
DUARTE, Acting P. J.

  /s/
FEINBERG, J.

13